IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 26-30272 |
| | § | |
| TEDDY LEE BOOHER | § | (CHAPTER 11) |
| | § | (SUBCHAPTER V) |
| DEBTOR | § | |

## HARRIS COUNTY'S BRIEF IN RESPONSE OF RECEIVERS' EMERGENCY MOTION TO ENTER SALE ORDER

On February 11, 2026, Eva S. Engelhart and Travis Vargo, the Receivers for the real property located on 7815 Highway 225, LaPorte, Texas 77541 ("Property") in the above-referenced bankruptcy case filed *Receivers' Emergency Motion to Enter Sale Order Providing Sale Of Property Free and Clear of Liens and Claims Pursuant to 11 U.S.C. § 363(b) and (f)* ("Motion to Enter Sale Order"). Harris County now files this brief in support of the Motion to Enter Sale Order and requests this Court to allow the sale of the Property at issue to proceed without further delay.

## BACKGROUND AND PROVISIONS OF THE STATE COURT'S INJUNCTIVE ORDER

A civil enforcement action brought by Harris County, Texas ("Harris County") and the State of Texas ("State") against Ted Booher ("Debtor" or "Booher") and Rapid Marine Fuels, LLC ("Rapid") for violations of state environmental laws and local regulations is currently pending before the 281st Judicial District Court of Harris County, Texas in Cause No. 2021-56988 (the "State Court Litigation"). Several arguments presently made by Debtor in opposition to the Receivers' Motion to Enter Sale Order have already been fully litigated in the State Court Litigation. In these bankruptcy proceedings, Debtor attempts to re-litigate issues on which he did

not obtain a favorable ruling in the State Court Litigation. One such issue is the matter of disposal of barrels (contaminated or clean) and other items that are classifiable as solid waste. Debtor argues these items are outside of the bankruptcy estate property, and that therefore he should be permitted to take and use those items in future business ventures. However, the 281st Judicial District Court has already decided on the fate of these items and should be of no concern to this honorable Court.

<u>The State Court Litigation Agreed Permanent Injunction</u>

On December 3, 2024, the honorable Judge Weems of the 281st Judicial District Court of Harris County signed the Agreed Permanent Injunction ("API"). (Harris County has previously filed the API with this Court; it is entered as Document 13-3). The API includes provisions that have already determined the fate of personalty and/or chattels Debtor seeks to take from the property in La Porte ("the Property"). The particular ordering provision applicable to Receiver's Emergency Motion for Sale and wishes of Debtor expressed in this Court on March 3, 2026 is the following:

> "**Remove Solid Waste**. Immediately upon the Effective Date, Defendants shall begin removing all unauthorized Solid Waste from the Property, including but not limited to, any oil spills, household garbage, tires, construction materials, empty barrels and totes, and unused pallets. All Solid Waste removed from the Property must be disposed of at an authorized solid waste disposal facility..."

(API, page 8).

In addition to this provision, Judge Weems ordered that Harris County and the State of Texas are authorized to conduct inspections of the Property to determine compliance with applicable statutes of regulations. Subsequently, Harris County and the TCEQ conducted inspections of the Property to determine compliance with the agreed upon compliance items

within the specified period. After determining Debtor failed to comply with the API, the State filed its motion for contempt.

### *Contempt and Application for Receiver Hearing*

On June 23, 2025, the State Court heard arguments primarily concerning the State's contempt motion but also the application for a receivership for Rapid. The State Court set a hearing for July 30, 2025, to (1) determine the appropriate sanctions to impose on Debtor as related to the finding of contempt; and (2) hear arguments on the application for a receivership for Rapid. The State Court further instructed the parties to submit any briefs to the court and for Debtor to produce limited discovery pertaining to Debtor's financial ability to comply with the API and complete the required environmental remediation. This hearing ultimately was re-set to August 4, 2025. In preparation for the hearing, Harris County again inspected the Property to determine the status of noncompliance and safety concerns, filed a brief in support of the appointment of a receiver, and hired Civitas Engineering Group, Inc. ("Civitas") to review the Property, all available data, and determine the extent and cost of remediation.

### *Sanctions and Application for Receiver Hearing*

During the all-day evidentiary hearing on August 4, 2025, several witnesses were presented and examined including TCEQ investigator Karina Rocha, HCPCSD investigator Elita Castleberry, expert witness Randy Palachek with Civitas, Gregory Orr, and Debtor. One of the crucial disputes argued during this hearing was the extent of contamination and estimated costs to complete the remediation at the Property. Debtor consistently asserted in the State Court Litigation that he was capable of completing the remediation himself and that the work and costs would be nominal – far below what Harris County believed it to be. As such, Harris County hired an independent expert to provide a technical report and breakdown of cost estimates. Debtor and Rapid offered Mr. Orr as Debtor's environmental consultant and testified as to what remediation

3

he believed would need to be completed and what he estimated the costs to be. Mr. Orr opined that the remediation costs would be approximately $280,000, but did not provide a cost breakdown, itemizing what funds would be used for the several items necessary for remediation. Mr. Palachek estimated that the cost of clean up would be significantly higher at nearly twelve million dollars.

## ARGUMENT

*I.     This court should not permit Debtor Ted Booher to remove barrels or totes or any other solid waste from the Property because he cannot do so without being in violation of the Agreed Permanent Injunction or Texas' environmental statutes and regulations. This issue has clearly been decided by the 281st Judicial Court of Harris County.*

The API's provisions, read in conjunction with Texas's environmental statutes and regulations, make it essentially impossible for Debtor to legally remove totes, barrels, or other solid waste from the Property and use it for future business ventures. Debtor has stated that his intentions with these used oil filters, barrels, totes, and other items classifiable as solid waste are to re-use them for a new used oil recycling business. However, the API's language defining solid waste includes these barrels and other items Debtor has expressed interest in taking to use for future business ventures. The 281st Judicial District Court has already determined what must be done with these items, therefore this honorable Court should not permit Debtor to take the barrels, totes, or any other item that falls within the API's definition of solid waste because the issue has already been litigated and decided.

   A.     <u>The 281st Judicial District ordered Debtor to remove Solid Waste from the Property and dispose of it at an authorized facility. Therefore, Debtor and Rapid cannot take anything classifiable as Solid Waste.</u>

The API orders that debtor must remove all unauthorized solid waste from the Property. Specifically, the 281st Judicial District Court ordered "[i]mmediately upon the Effective Date,

4

Defendants shall begin removing all unauthorized Solid Waste from the Property, including but not limited to, any oil spills, household garbage, tires, construction materials, empty barrels and totes, and unused pallets. All Solid Waste removed from the Property must be disposed of at an authorized solid waste disposal facility…" Second, Judge Weems ordered Ted Booher and Rapid "shall not store a used oil filter for more than 120 days on the Property, in accordance with 30 Texas Administrative Code § 328.26(a). After the Effective Date, any used oil filters stored more than

This honorable Court should consider certain definitions included in the API that guide interpretation of the injunctive provisions:

- "Solid Waste" is defined as "garbage, rubbish, refuse, sludge, and other discarded material resulting from industrial, municipal, commercial, mining, and agricultural operations and from community and institutional activities…and includes municipal solid waste, industrial solid waste, industrial waste, hazardous waste, hazardous substance, and other wastes as defined in these provisions, as well as broken and unused pallets, trash, household garbage, scrap tires, discarded construction materials, collapsed, broken or empty drums, barrels, and totes." (API, page 2).

- "Industrial Waste" is defined as "waterborne liquid, gaseous, or solid substances that result from any process of industry, manufacturing, trade, or business." (API, page 2).

- "Other Waste" refers to "garbage, refuse, decayed wood, sawdust, shavings, bark, sand, lime, cinders, ashes, offal, oil, tar, dyestuffs, acids, chemicals, salt water, or any other substance, other than sewage, industrial waste, municipal waste, recreational waste, or agricultural waste." (API, page 2).

- "Used oil" refers to "oil that has been refined from crude oil, or synthetic oil, that as a result of use has been contaminated by physical or chemical impurities." (API, page 3).
- "Used oil filter" is defined as "any device that is integral part of an oil flow system, the primary purpose of which is to remove contaminants from flowing oil contained in the system, and that, as a result of use has become contaminated and unsuitable for its original purpose, is removed from service, and contains entrapped used oil." (API, page 3).

The API issued by the 281st Judicial District Court effectively accounts for each used oil filter as well as each barrel, container, or tote on the Property, both empty and partially filled, such that there is no need to revisit the issue of allowing Debtor to take these items. These items fall within the API's definition of solid waste on multiple grounds. Firstly, the API's definition of solid waste specifically includes "collapsed, broken, or empty drums, barrels, and totes" such as those captured in photos that have been admitted into evidence in this case. Second, solid waste includes industrial waste, and industrial waste largely covers the contents of those drums, barrels, and totes. Based on the nature of Rapid/Debtor's business as a used oil recycler, the contents of those containers would be "substances that result from any process of industry, manufacturing, trade, or business," thus making them industrial waste. Third, the definition of "other wastes," which is included in the definition of solid wastes, includes "oils, dyestuffs, acids, and chemicals." The definition of other wastes captures the potential contents of those drums, barrels, and totes at issue, and therefore those items constitute solid waste. Given the scope of the definitions included in the API, the drums, barrels, totes, and other containers Debtor seeks to take, as well as their contents, fall within the definition of solid waste. Therefore, Debtor cannot take these items because they are solid

waste, and the API clearly states that all solid waste must be removed from the Property and disposed of at an authorized facility.

> B. *The issue of Debtor's intended use of the solid waste for future business endeavors runs afoul of the Agreed Permanent Injunction.*

The 281st Judicial District Court has clearly ordered that all solid waste from the Property must be disposed of at an authorized facility. The Debtor has expressed his intention with the solid waste items from the site is to re-use them to start a new oil recycling business. Debtor's intentions run afoul of the Agreed Permanent Injunction. The only option Mr. Booher has with the solid-waste items is to bring them for disposal at an authorized facility. Mr. Booher has provided no evidence that he will take the solid waste from the Property to an authorized disposal facility or that he has the necessary licenses or other authorizations from the Texas Commission on Environmental Quality to transport any solid waste from the Property. This honorable Court should therefore not allow Mr. Booher to take solid-waste items from the Property for any purpose other than their disposal at an authorized facility because any other use of the solid waste items would run afoul of the 281st Judicial District Court's order.

> C. *Continued hindrance of the sale of this Real Property exacerbates environmental issues, the only remedy for which is an informed and capable buyer who is ready and capable to complete the remediation efforts.*

This Property is severely contaminated, and allowing the contamination to lay for a continued and extended period of time presents further complications and life-safety issues. Randy Palachek, Harris County's expert witness in the State Court Litigation estimated the cost of the remediation to be at least twelve million dollars. This estimate does not include remediation of groundwater, which can become further contaminated by chemicals seeping from the oil and chemical ridden soil across the Property. Additionally, the Property is in violation of the Harris County Fire Code. The buildings on the site lack necessary permits ensuring their safety and ability to be occupied.

Further, first responders would not be able to access a large swath of the Property should a fire occur. Harris County supports Receiver's seeking emergency relief in this matter because time is of the essence in getting the Property to the buyer, who is willing and able to conduct the remediation efforts and has been previously vetted by the County.

## CONCLUSION

The 281st Judicial District Court ordered that all solid waste from the Property must be removed from the Property and disposed of at a facility authorized to dispose of that solid waste. The Debtor has made it an issue before this Court to allow him to take certain items from the Property to re-use in his future business endeavors. However, the items that Debtor seeks to take from the Property constitute solid waste within the definition of solid waste set forth in the Agreed Permanent Injunction. Because the items Debtor Ted Booher seeks to take from the Property are solid waste, he cannot use them in any future business and rather must dispose of them at an authorized solid waste disposal facility. Any use of those items outside of their disposal at an authorized facility runs afoul of the 281st Judicial District Court's order and should not be allowed by this honorable Court.

Respectfully submitted,

**JONATHAN FOMBONNE**
Harris County Attorney

**SARAH J. UTLEY**
Managing Counsel, Affirmative and Environmental

**BETHANY DWYER**
DEPUTY DIVISION DIRECTOR, ENVIRONMENTAL

8

   /s/  Alexandra Keiser
Alexandra "Alex" Keiser
Assistant County Attorney
Environmental Division
State Bar No. 24137975
Fed. No. 3919225
1019 Congress, 15th Floor
Houston, Texas 77002
Telephone: (713) 274-3061
Cell: (832) 570-7583
Facsimile: (713) 437-4211
Email: alex.keiser@harriscountytx.gov

**ATTORNEYS FOR PLAINTIFF
HARRIS COUNTY, TEXAS**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of March, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which automatically provided notice on all parties requesting notice in this proceeding.

 /s/ *Alexandra J Keiser*
Alexandra "Alex" Keiser
Assistant County Attorney